UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN BARNES,

     Plaintiff,

                                      Hon. Sally J. Berens

v.

                                      Case No. 1:21-cv-1007

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including entry of an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on January 25, 2019, alleging that he had been disabled as of December 21, 2018, due to multiple sclerosis (MS), diabetes, traumatic brain injury (TBI), optical nerve damage, pain and limitations due to injuries to pelvis and shoulders, etc.,

plates/screws, etc., from accident, chronic pain, numbness from carpel tunnel syndrome in both hands, and post-traumatic stress disorder (PTSD). (PageID.288–89, 386–89.) Plaintiff was 39 years old at the time of his alleged onset date and when he filed his application. (PageID.288.) Plaintiff had completed two years of college. (PageID.418.) Plaintiff's past relevant work was as a CNC machinist and machinist setter. (PageID.52, 419.) After Plaintiff's application was denied initially and on reconsideration, he requested a hearing before an ALJ.

On October 26, 2020, ALJ Colleen M. Mamelka held a hearing by telephone and received testimony from Plaintiff, who was unrepresented, Plaintiff's mother, and Joanne M. Pfeffer, an impartial vocational expert (VE). (PageID.250–284.) On November 17, 2020, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because he had not been disabled since his alleged onset date through the date of the decision. (PageID.41–54.) The Appeals Council denied Plaintiff's request for review on October 1, 2021. (PageID.26–29.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on November 30, 2021.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through December 31, 2023, and had not engaged in substantial gainful activity since his alleged onset date of December 21, 2018, the ALJ found that Plaintiff suffered from severe impairments of MS; chronic pain syndrome; left hip fracture status post open reduction internal fixation; metatarsalgia

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

of the left foot; optic neuritis; depression; and anxiety. (PageID.43.) The ALJ found Plaintiff's

diabetes mellitus, gastroesophageal reflux disease, cognitive impairment, and insomnia to be

nonsevere impairments. (PageID.43–44.) In addition, the ALJ found PTSD, TBI, and carpal tunnel

syndrome were not medically determinable impairments. (PageID.44–45.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled any impairment identified in the Listing of

Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.55–57.) The ALJ

considered listings 1.02, 1.03, 2.03, 2.04, 2.05, 11.09, 12.04, and 12.06.

The ALJ found that Plaintiff retained the capacity to perform sedentary work as defined in

20 C.F.R. § 404.1567(a), except that:

> he can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, and
> reach overhead with the left upper extremity. He can never climb ladders, ropes, or
> scaffolds, work at unprotected heights, or work near dangerous moving machinery.
> He can never tolerate exposure to extreme cold, extreme heat, wetness, or vibration.
> He can perform simple, routine tasks with occasional interaction with the general
> public.

(PageID.46.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as

generally performed in the national economy and as Plaintiff actually performed it. (PageID.52.)

At step five, the ALJ found that an individual of Plaintiff's age, education, work experience, and

RFC could perform the occupations of touch-up screener, dowel inspector, and table worker,

approximately 606,000 of which existed in the national economy. (PageID.53–54.) This represents

a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir.

2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court

and others have deemed 'significant'").

**DISCUSSION**

Plaintiff raises two issues in his appeal, one of which has three subissues: (1) the ALJ erred in his RFC finding and corresponding hypothetical to the VE by: (a) failing to include any limitation for Plaintiff's limited field of vision in his left eye due to optic neuritis, which the ALJ found was a severe impairment; (b) failing to include fine and gross manipulation limitations reflecting Plaintiff's carpal tunnel syndrome as a medically determinable impairment; and (c) failing to include limitations regarding the need to avoid rough, uneven, slippery, shifting, and/or obstructed terrain; and (2) the ALJ's controlling hypothetical to the VE did not accurately state the RFC. (ECF No. 8 at PageID.1118–19.)

## I. Deficient RFC

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3). While the ALJ makes the RFC determination, that determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012). The claimant has the burden of proving his impairments. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (noting that the burden of proof lies with the claimant at steps one through four of the sequential

6

evaluation process and that "it is not unfair to require a claimant to prove the extent of his impairments") (citing *Bowen*, 482 U.S. at 146 n. 5).

### A.    Carpel Tunnel Syndrome Limitations

Plaintiff was injured in a motorcycle accident in 2012, resulting in injuries to his left shoulder, jaw, face, and pelvis. (PageID.48, 268–69, 905, 907.) After the accident he developed carpel tunnel symptoms in his right hand, apparently related to the motorcycle accident. (PageID.78.) He underwent surgery in 2012 and responded well. (PageID.80-81, 83.) In July 2013, Plaintiff returned to the orthopedic physician complaining about numbness in his left hand. (PageID.84.) Following surgery on his left hand in October 2013, he reported "doing well" and that the numbness in his fingers was "better." (PageID.93.) At the hearing, Plaintiff testified that he had "very little feeling" in the fingertips of his left hand and some loss of feeling in his right hand, but he had more difficulty grasping small objects with his left hand. (PageID.269.)

Regarding carpel tunnel syndrome, the ALJ wrote:

The physician who treats the claimant's [sic] for multiple sclerosis stated in a letter that the claimant has carpal tunnel syndrome that affects dexterity and fine motor movement (15E, p.2), and the claimant alleged that he cannot work with small objects in his left hand due to loss of feeling in the fingers of that hand (hearing testimony). However, the treatment record does not document a diagnosis of carpal tunnel syndrome by an acceptable medical source supported by medically acceptable clinical or laboratory diagnostic techniques such as Phalen's testing or an electromyogram (EMG). Therefore, carpal tunnel syndrome is not a medically determinable impairment during the adjudicated period.

(PageID.44–45.)

Pursuant to the agency's regulation, a claimant's impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The claimant must provide "objective evidence from an acceptable medical source." *Id.* The "claimant's statement of symptoms, a diagnosis, or a medical opinion," do not suffice. *Id.* Plaintiff contends that the ALJ

erred because a letter and treatment note during the period at issue from Dr. Andrew Romeo, who treated Plaintiff's MS, support that Plaintiff's carpel tunnel syndrome affect his dexterity and fine motor movement. (ECF No. 8 at PageID.1126–27.) This evidence, however, does not satisfy the regulation's requirement that an impairment can only be established through objective medical evidence. *See Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at \*4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96-4p, 1996 WL 374187, at \*1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence.").

Invoking the ALJ's duty to fully develop the record where the claimant is unrepresented, as set forth in *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983), Plaintiff contends that the missing objective evidence would have been in the record had the hearing office accepted his offer of records relating to his 2012 accident. Prior to the hearing, Plaintiff sent the hearing office a letter enclosing disability letters from his providers, including the letter from Dr. Romeo, and offering to provide his records relating to his injuries arising from his 2012 accident, which included his carpel tunnel syndrome records. (PageID.529–32.) The hearing office declined to have Plaintiff submit the records because they were outside the scope of review and were mentioned in records that were already a part of the record. (PageID.534.)

Recently, in *Moats v. Commissioner of Social* Security, 42 F.4th 558 (6th Cir. 2022), the Sixth Circuit revisited the ALJ's duty to adequately develop the record mentioned in *Lashley*, observing that *Lashley* "is best viewed as an extreme example of an ALJ failing to adequately develop the record before it." *Id.* at 564. That is, the unrepresented claimant in that case had only a fifth-grade education, was inarticulate and easily confused, and had suffered strokes that impaired his memory and ability to read. *Id.* (citing *Lashley*, 708 F.2d at 1050–52). The *Moats*

court observed, "[t]hat combination of extreme impairments coupled with the ALJ's perfunctory review seemingly left an insufficient record to accurately gauge the extent of the claimant's disability." *Id.* The court found that, unlike the claimant in *Lashley*, "Moats's case is not one of extreme circumstances." *Id.* There was no indication that the claimant did not understand the hearing procedures, he was able to answer questions from the ALJ and VE about his medical, educational, and employment history, and the ALJ made every effort to assist him. *Id.* Plaintiff's circumstances here are much closer to the claimant's in *Moats* than the claimant's in *Lashley*. The facts that Plaintiff supplied letters from his doctors, offered to send his 2012 records, and presented testimony from his mother at the hearing demonstrates that he was aware of his burden to establish disability and capable of presenting his claim. It is also clear from the transcript that the ALJ fully explained the hearing process and that Plaintiff understood it. (PageID.255–56.) Moreover, the hearing in this case, having spanned more than an hour, resembled the "over an hour" hearing in *Moats* rather than the perfunctory 20-minute hearing in *Lashley*. *Id.* Thus, there is no basis here for applying *Lashley*.

In any event, the ALJ did not err in failing to address Plaintiff's records from 2012–13. Because those records were generated more than 12 months before Plaintiff filed his application for benefits on January 25, 2019, they were not required to be included in Plaintiff's medical history. *See* 20 C.F.R. § 404.1512(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . *Complete medical history* means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application.") (italics in original). The hearing office accurately determined that the records from 2012–13 were outside the relevant period. Following the second surgery, Plaintiff returned to full-

time work from 2014 to 2017, and there is no indication that he sought treatment for carpel tunnel syndrome since that time, that further diagnostic testing had been performed, or that the pre-surgery testing he cites from 2012 and 2013 (PageID.111, 114), accurately reflected his condition as of December 2018. *See Kepke v. Comm'r of Soc. Sec.*, No. 13-13944, 2015 WL 348747, at \*16 (E.D. Mich. Jan 23, 2015), *aff'd*, 636 F. App'x 625 (6th Cir. 2016) (rejecting the plaintiff's argument that the ALJ failed to consider her diagnosis of carpel tunnel syndrome where the records were relevant to a prior period and there was no evidence "from the relevant time period to support a current diagnosis of carpal tunnel syndrome with related signs and resultant limitations").

Accordingly, Plaintiff fails to show that the ALJ erred by not incorporating manipulative limitations into her RFC determination.

### B.    Vision and Walking Limitations

Plaintiff next argues that, having found his optic neuritis resulting from his 2012 accident to be a severe impairment, the ALJ erred by failing to include his limited field of vision in both her RFC finding and the hypothetical to the VE. This argument lacks merit. First, the mere diagnosis of a condition does not justify relief. *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . of course, says nothing about the severity of the condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). That is, the fact that an impairment is found to be severe does not dictate its limiting effects. Second, the ALJ, in fact, included limitations to account for Plaintiff's "limited field of vision in the left eye," namely, precluding work at unprotected heights and near dangerous moving machinery. (PageID.46, 49.) Thus, the ALJ explicitly considered this impairment in formulating her RFC. Finally, Plaintiff cites no evidence supporting further limitations. As Defendant notes, Plaintiff returned to full-time work nine months after the 2012 accident, continuing until 2018, and there is

no evidence that his vision worsened during that time. *See Bowen v. Soc. Sec. Admin.*, 581 F. App'x 544, 545 (6th Cir. 2014) ("Given that Bowen performed light or medium work until the alleged onset date of disability and that there is no credible medical evidence or testimony showing that she subsequently developed limitations precluding light work, substantial evidence supported the ALJ's RFC determination."). Moreover, eye examinations during the relevant period found visual acuity in both eyes, preserved left eye central vision, and no optic disc edema. (PageID.900.) Plaintiff also denied blurred vision, double vision, and vision loss. (PageID.850.)

Plaintiff also contends that remand is required because the ALJ found the opinions of the State agency physicians Alyce Metoyer, D.O., and Robin Mia, D.O., persuasive, but declined to include their limitations of needing to avoid "rough, uneven, slippery, shifting, [and/or] obstructed terrain" in her RFC finding and hypothetical to the VE. (ECF No. 8 at PageID.1128 (citing PageID.300 and 321).) Plaintiff argues that the ALJ failed to explain why she did not incorporate these limitations. The ALJ did not explicitly state why she omitted such limitations, but her discussion clearly suggests her reasoning. Whereas both doctors determined that Plaintiff could perform a reduced range of light work, the ALJ found that the medical evidence developed at the hearing level supported a more restrictive RFC for sedentary work. (PageID.51.) Because light work "requires a good deal of walking or standing – the primary difference between sedentary and most light jobs," Social Security Ruling 83-10, 1983 WL 31251, at *5, these limitations are not necessarily germane to an RFC for sedentary work. *Cf.* Social Security Ruling 96-9p, 1996 WL 374185, at *7 ("If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base."). Moreover, the omission these limitations is immaterial as none of the jobs the ALJ identified from the Dictionary of Occupational Titles (DOT) requires walking on rough,

11

uneven, slippery, shifting, or obstructed terrain. DOT 726.684-10, 1991 WL 679616 (Touch-up screener, printed circuit board assembly); DOT 669.687-014, 1991 WL 686074 (Dowel Inspector); DOT 739.687-182 (Table Worker).

## II.     Inaccurate Hypothetical

Plaintiff contends that remand is warranted because the ALJ's controlling hypothetical to the VE did not accurately reflect the RFC. The ALJ's RFC limited Plaintiff to "never . . . work[ing] near dangerous moving machinery," (PageID.46), but her hypothetical stated that "[t]here would be no . . . dangerous moving machinery." (PageID.277.) Plaintiff contends that the hypothetical did not square with the RFC because, while it precluded working with dangerous moving machinery, it did not preclude work proximate to dangerous moving machinery. (ECF No. 8 at PageID.1125.)

The issue here is not whether the RFC accurately portrayed Plaintiff's physical and mental impairments. As set forth above, no additional limitations were appropriate, and there is no indication that the RFC itself was inaccurate. Therefore, *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) (holding that remand was warranted because the ALJ's hypothetical to the VE did not accurately convey the speed-and-pace limitations in the physician's opinion that the ALJ had credited), is not germane to the present circumstances. Similarly, Plaintiff's reliance on *Porter v. Commissioner of Social Security*, No. 1:17-cv0575, 2018 WL 4356569 (W.D. Mich. Sept. 13, 2018), is misplaced because the issue there was whether the RFC accurately reflected the claimant's mental impairments, not whether the question to the VE was consistent with the RFC determination. *Id.* at *6.

Citing *Kepke v. Commissioner of Social Security*, 636 F. App'x 625 (6th Cir. 2016), Defendant asserts that minor discrepancies between the RFC and the hypothetical to the VE provide no basis for remand. The Sixth Circuit observed in *Kepke* that, while "the hypothetical

question must accurately describe the claimant, there is no requirement that it must match the language of the RFC verbatim." *Id.* at 635. The parties dispute whether the VE would have understood from the ALJ's conveyance of no dangerous, moving machinery that the limitation was no work *near* dangerous, moving machinery. Regardless, the Court need not resolve the issue because, even if the ALJ erred, the error is harmless because none of the jobs the VE identified involved exposure to moving mechanical parts. DOT 726.684-10, 1991 WL 679616 (Touch-up screener, printed circuit board assembly); DOT 669.687-014, 1991 WL 686074 (Dowel Inspector); DOT 739.687-182 (Table Worker). *See Moss v. Comm'r of Soc. Sec.*, No. 1:16 CV 2809, 2017 WL 6987957, at *5 (N.D. Ohio Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 454391 (N.D. Ohio Jan. 16, 2018) (finding remand to allow the VE to interpret DOT job descriptions unnecessary because none of the jobs required exposure to environmental conditions that the RFC precluded, and any discrepancy was harmless); *Elliott v. Berryhill*, No. 3:13-cv-01397, 2017 WL 998072, at *16 (M.D. Tenn. Mar. 14, 2017) (ALJ's omission of limitation relating to concentrated exposure to vibration was harmless where the DOT job listings specified that vibration was not present); *Ferrell v. Comm'r of Soc. Sec.*, No. 1:14-cv-1232, 2016 WL 316724, at *7 (W.D. Mich. Jan. 27, 2016) (finding harmless error based on a discrepancy between the RFC and the ALJ's hypothetical because "[a] review of the DOT descriptions for the jobs identified by the VE demonstrates that the postural abilities Plaintiff would be limited in are not required abilities for the positions").

Accordingly, because any error was harmless, this argument is rejected.

**CONCLUSION**

For the reasons stated above, the Commissioner's decision is **affirmed**. An order consistent

with this opinion will enter.


Dated: September 12, 2022                         /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge